IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

|  |  |
|---|---|
| IN RE SUBPOENA TO PLITEK, LLC<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Movant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No.  FILED: APRIL 28, 2008
      08CV2415        TG
      JUDGE SHADUR
Judge MAGISTRATE JUDGE DENLOW

Magistrate Judge

**THE PROCTER & GAMBLE COMPANY'S MOTION TO ENFORCE
PLITEK, LLC'S COMPLIANCE WITH RULE 45 SUBPOENA; MEMORANDUM
IN SUPPORT OF MOTION**

HOWREY LLP
321 North Clark Street
Suite 3400
Chicago, IL 60610
312-846-5622

HOWREY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614
Telephone: (949) 721-6900
Facsimile: (949) 721-6910

DM_US:21193325_1

**MOTION**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, The Procter & Gamble Company ("P&G") moves for an order enforcing the third-party Subpoena issued by this Court to Plitek, LLC ("Plitek"), including an order pursuant to Rule 45(c)(2)(B) compelling production of the documents requested in the Subpoena. This motion is based on Rule 45, the accompanying Memorandum of Points and Authorities, and the accompanying Declaration of Scott Maynard.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

P&G seeks to enforce a subpoena it served on Plitek on February 8, 2008 to obtain important discovery that P&G needs to prepare its defense to a patent infringement action pending in the Western District of Wisconsin. The action was brought by Kraft Foods Holding, Inc. ("Kraft") against P&G, and it alleges that P&G is infringing Kraft's patent directed to a plastic coffee container equipped with a so-called "vent valve" for venting gases that build up inside the container. Plitek makes the "vent valve" that is described in the Kraft Patent and is used in Kraft's products. Plitek also provides design support services to Kraft to (among other things) assist Kraft in overcoming technical challenges related to its coffee containers. And Plitek has its own patent directed to a vent valve. Not surprisingly, Kraft's Rule 26 disclosures identified Plitek as likely to have relevant, discoverable information.

Plitek's response to P&G's subpoena, however, was less than fully forthcoming. Accordingly, P&G moves to enforce compliance with four requests in its Subpoena, Request Nos. 2, 3, 15 and 16. As explained below, the Court should compel Plitek to produce the requested documents because:

1. Plitek is improperly trying to withhold documents based on their alleged "confidentiality," even though the court in which the action is pending has entered a protective order that extends to documents produced by third parties, such as Plitek;

2. Plitek's string of boilerplate objections to the form or scope of the Requests have no merit; and

3. Plitek has not substantiated its claims of attorney-client privilege.

The underlying action is on an accelerated schedule and deadlines are quickly approaching; P&G's motions for summary judgment must be filed on May 9, and expert reports are due beginning on June 10th. Plitek is in possession of documents that are relevant to the invalidity of Kraft's patent as well as to licensing rates relevant to the technology involving Plitek's patent. P&G is being prejudiced by Plitek's refusal to produce documents and respectfully requests that the Court compel Plitek to produce documents responsive to the disputed requests, along with a privilege log, within seven (7) days of the Court's order.

## II.     FACTUAL BACKGROUND

### A.     The Underlying Litigation

Kraft and P&G both sell fresh-roasted ground coffee in plastic containers. These containers have plastic lids or "overcaps." The overcaps cover flexible lids that seal the coffee in the containers and prevent outside oxygen from entering the container, thereby maintaining the freshness of the coffee. It is well known, however, that fresh-roasted ground coffee gives off substantial amounts of carbon dioxide ("$CO_2$"). To allow "off gassing" of this $CO_2$, the flexible lids are equipped with vent valves of the type sold by Plitek.

The photographs below show the containers sold by P&G and Kraft after their plastic lids (or overcaps) have been removed to expose their flexible lids (sometimes called peelable seals) and vent valves.

*P&G's Container*                                 *Kraft's Container*

[P&G's Container photo with arrow pointing to "Vent valve"]     [Kraft's Container photo with arrow pointing to "Vent valve"]

Declaration of Scott R. Maynard ("Maynard Decl."), ¶2.

On October 26, 2007, Kraft filed a complaint in the Western District of Wisconsin alleging that P&G's plastic coffee containers infringe its U.S. Patent No. 7,074,443 (the "Kraft

Patent"). Maynard Decl., Ex. 1. P&G denies these allegations and asserts, among other things, that Kraft's patent is invalid because it does not disclose any "invention" that was new or non-obvious at the time Kraft filed its patent application in 2002. Maynard Decl., Ex. 2.

  **B.** **The Kraft Patent**

The Kraft Patent discloses a "conventional can" in which ground, roast coffee is covered by a flexible lid 12 and a plastic lid or "overcap" 20. Maynard Decl., Ex. 3 at 3:42-57[1]. A vent valve 16 allows excess carbon dioxide gas to escape once the internal pressure of the can reaches a predetermined level. *Id*. at 3:53-56. As the internal pressure rises, the flexible lid is pushed upward to a domed position. *Id*. at 4:1-12. The Kraft Patent states that the problem with coffee cans made before its alleged invention was that the vent valves could become blocked when the lid moved upwardly and eventually against the overcap, thereby preventing the gas from venting, which in turn caused the flexible lid (and the can itself) to deform. *Id*. at 4:12-23. The dotted lines in Figure 1 of Kraft's patent, reproduced below, show the conventional prior art can with lid 12′ pressed against the overcap 20, thereby blocking the vent valve 16′, resulting in deformation of the can 10′. *Id*. & Fig. 1.[2]



FIG. 1
PRIOR ART

Kraft's named inventors did not assert that they invented any part of what is shown in Figure 1. Instead, they patented what they asserted was an "inventive" solution to the problem of valves, including those sold by Plitek, becoming blocked by not having enough space between the valve and the container overcap.

---

[1] These numbers refer to the Kraft Patent's column and line numbers.
[2] Color has been added to illustrate the various parts of the cans shown in Figures 1 and 4-7 of the Kraft patent. The lid and overcap are colored blue, the vent valve green, and the spacing structures colored red.

3

In its patent, Kraft described two alternative embodiments of a purportedly inventive "spacing structure." The first embodiment is shown in Figure 9 of the Kraft '443 Patent. It is simply a pocket 46 recessed into the bottom of the overcap that creates space above the vent valve, as shown in the red colored region below:



FIG. 9

Maynard Decl., Ex. 3, Fig. 9.

Another embodiment of Kraft's purported "spacing structure" invention creates a space between the overcap and the valve by providing protrusions or "bosses" 31, 32 and 33 (colored red below) on the underside of the overcap 30 which engage the valve 16 as it moves upwardly. *Id*. at 4:55-63. When the bosses engage the vent valve 16, they limit the further upward lid movement, and the vent valve remains unblocked. *Id*. This structure is shown in Figures 4-7 of the patent, and is reproduced below.




FIG. 4    FIG. 6    FIG. 5    FIG. 7

4

### C. Plitek, P&G's Subpoena and Plitek's Response

Plitek makes the vent valves that are described in the Kraft Patent and are used by Kraft in its coffee packaging. Plitek's PLI-VALV® Packaging Degassing System is designed for "venting natural $CO_2$ build-up from coffee packaging while sealing-out environmental oxygen, moisture & contaminants." Maynard Decl., Ex. 4. Plitek also provides design support services to customers, among other things, "overcome technical challenges;" "improve manufacturing efficiency;" and "optimize integration/assembly with . . . finished product[s]." Maynard Decl., Ex. 5.

Plitek holds a patent directed to one of its valve products, U.S. Patent No. 7,178,555. Maynard Decl., Ex. 6. Plitek's patent explicitly references the basic problem on which the Kraft patent purports to base an "invention" – namely, that vent valves can become blocked by contact with other objects. In particular, the Plitek patent states that blockage can occur "especially when numerous cartons are packaged together in bulk, [such that] the operation of the film is often obstructed or impeded by an adjoining carton which is placed in contact with the membrane or film." *Id.* at 1:26-27. The flexible film or membrane is the part of the valve that moves up under pressure to open the valve and then, once the pressure in the container equalizes, moves back down to close the valve. *Id.* at 2:38-44. Unlike prior art that used outer structures or rails to prevent objects from contacting the film, Plitek's patent is directed to using at least one inner rail to prevent the valve from becoming blocked by external objects. *Id.* at 1:29-36; 2:47-52.

In its Initial Disclosures, Kraft identified Plitek as a party likely to have discoverable information related to the action. Maynard Decl., Ex. 7 at 9. Indeed, the Kraft Patent itself discloses that "[t]he vent valve [used in the disclosed invention] is a commercial product made by Plitek LLC." Maynard Decl., Ex. 3 at 4:25-26.

Relying on this information and on a conversation with a Plitek engineer, Dick Boiteau, who has worked with Kraft for several years to help Kraft develop its coffee containers, P&G served a subpoena *duces tecum* on Plitek to obtain relevant documents. *See* Maynard Decl., Ex. 8. The four document requests at issue seek documents that relate to the prevention of vent valve blockage (Request Nos. 2 and 3) and documents that relate to license agreements between Plitek and Kraft, or between Plitek and other third parties, related to the use of Plitek's patented valve

5

technology or other technology related to packaging (Requests Nos. 15 and 16). Maynard Decl., Ex. 8. These four requests, along with Plitek's responses, are reproduced in full below:

> **REQUEST NO. 2:**
> All documents relating to vent valves not allowing gases to escape a container, including, but not limited to, documents relating to preventing vent valves from being blocked by the overcap of a container.
>
> **PLITEK'S RESPONSE TO REQUEST NO. 2:**
> In addition to the foregoing general objections, which are expressly incorporated herein, Plitek objects to this request on the grounds that it is burdensome, oppressive, and harassing. Plitek further objects to this request to the extent it seeks information that is subject to confidentiality agreements with Kraft and other third parties, without the prior consent of such parties. Plitek further objects to this request on the grounds that it is vague and ambiguous and overly broad as to time. Plitek further objects to this request on the grounds that the term "vent valve" is vague and ambiguous. Plitek further objects to this request to the extent it seeks information protected from production by the attorney-client privilege, attorney work product immunity and/or any other privileges or exemptions. Subject to and without waiving the foregoing general and specific objections, Plitek responds that after a reasonable investigation, it is not aware of documents in its possession, custody or control "relating to preventing vent valves from being blocked by the overcap of a container."
>
> **REQUEST NO. 3:**
> All documents relating to vent valves, including degassing valves, not functioning properly because of blockage, including documents describing methods of preventing valve blockage.
>
> **PLITEK'S RESPONSE TO REQUEST NO. 3:**
> In addition to the foregoing general objections, which are expressly incorporated herein, Plitek objects to this request on the grounds that it is burdensome, oppressive, and harassing. Plitek further objects to this request to the extent it seeks information that is subject to confidentiality agreements with Kraft and other third parties, without the prior consent of such parties. Plitek further objects to this request on the grounds that it is vague and ambiguous and overly broad as to time. Plitek further objects to this request on the grounds that the terms "vent valve," "not functioning properly," and "blockage" are vague and ambiguous. Plitek further objects to this request to the extent it seeks information protected from production by the attorney-client privilege, attorney work product immunity and/or any other privileges or exemptions. Subject to and without waiving the foregoing general and specific objections, Plitek responds that after a reasonable investigation, it is not aware of documents in its possession, custody or control "describing methods of preventing valve blockage."

**REQUEST NO. 15:**

All documents relating to any agreement entered into between Plitek and Kraft relating to vent valve technology, including, but not limited to, licensing agreements, agreements to perform work, and agreements to cooperate in litigation.

**PLITEK'S RESPONSE TO REQUEST NO. 15:**

In addition to the foregoing- general objections, which are expressly incorporated herein, Plitek objects to this request on the grounds that it is burdensome, oppressive, and harassing. Plitek further objects to this request to the extent it seeks information that is subject to confidentiality agreements with Kraft and other third parties, without the prior consent of such parties. Plitek further objects to this request on the grounds that it is vague and ambiguous and overly broad as to time. Plitek further objects to this request on the grounds that the term "vent valve" is vague and ambiguous. Plitek further objects to this request to the extent it seeks information protected from production by the attorney-client privilege, attorney work product immunity and/or any other privileges or exemptions.

**REQUEST NO. 16:**

All documents relating to licensing agreements between Plitek and any other company requiring the payment of royalties or a licensing fee for the use of technology relating to packaging technology.

**PLITEK'S RESPONSE TO REQUEST NO. 16:**

In addition to the foregoing general objections, which are expressly incorporated herein, Plitek objects to this request on the grounds that it is burdensome, oppressive, and harassing. Plitek further objects to this request to the extent it seeks information that is subject to confidentiality agreements with Kraft and other third parties, without the prior consent of such parties. Plitek further objects to this request on the grounds that it is vague and ambiguous and overly broad as to time. Plitek further objects to this request on the grounds that the phrase "technology relating to packaging technologies" vague and ambiguous. Plitek further objects to this request to the extent it seeks information protected from production by the attorney-client privilege, attorney work product immunity and/or any other privileges or exemptions.

Maynard Decl., Exs. 8 and 9.

In short, Plitek refuses to produce a single document in response to any of these four requests. Instead, it raises a host of boilerplate objections that have no merit – including objections that the terms "vent valve," "not functioning properly" and "blockage" are too vague and ambiguous for it to understand. Plitek also contends that the requested documents are private and cannot be disclosed without the permission of third parties (including Kraft); but it does not say that it has sought such permission and been refused. Plitek also asserts attorney client privilege and work product protections (and perhaps some other privilege or protection,

although it is impossible to tell from its responses), but it provided no log identifying which documents it has withheld on these grounds and the facts on which its assertion is based. And as to two of the requests – Nos. 2 and 3 – Plitek carefully quotes a subset of the request and asserts that there are no responsive documents to that portion of the request, but it does not claim (and could not credibly claim) that it has no responsive documents at all. Plainly, Plitek's responses are designed to be evasive and to avoid providing documents to P&G that might work to the detriment of Plitek's good customer, Kraft.

        D.        **Statement of Efforts to Reach an Accord**

In accordance with Local Rule 37.2, counsel for P&G and Plitek have met and conferred, but were unable to resolve dispute. Specifically, on March 10, 2008, P&G wrote to Plitek explaining why Plitek's responses to the Subpoena were deficient and requesting a telephone conference to address the same. Maynard Decl., Ex. 10. P&G attached to its letter a copy of the Protective Order entered in the underlying litigation to demonstrate that Plitek's confidentiality concerns were unwarranted. *Id.* The following day, Plitek's counsel called P&G's counsel. Maynard Decl., ¶13. During that conversation, Plitek's counsel stated that Plitek would stand by its objections and responses. *Id.*, ¶14. Counsel for P&G asked Plitek's counsel to provide dates when it would be available to discuss the matter in greater detail with other P&G counsel. *Id.*, ¶15. Plitek's counsel refused and stated that it would not meet and confer further on the subject. *Id.*, ¶16. Afterwards, Plitek's counsel sent a letter confirming that it was standing by its objections and responses. *Id.*, ¶14 & Ex. 11.

**III.**       **THE COURT SHOULD COMPEL PLITEK TO PRODUCE RESPONSIVE DOCUMENTS**

The scope of discovery obtainable by subpoena to a third party is as broad as permitted under normal discovery rules. *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008); *See Also* 8A Wright, Miller & Marcus, *Federal Practice & Procedure* §2209 at 391-92 (2d ed. 1994 and 2007 Supp.) (quoting Advisory Committee Note to 1991 amendments to Rule 45: "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom the request is addressed pursuant to Rule 34"). Rule 26 allows for discovery of relevant non-privileged materials. "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the

8

subject matter of the action." *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991). "A request for discovery . . . should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden v. Connaught Labs.*, 137 F.R.D. 336, 341 (D. Kan. 1991).

As shown below, the discovery P&G seeks is relevant to the underlying action, and Plitek cannot sustain its burden of demonstrating that its objections are valid.

### A.   P&G's Document Requests are Relevant to the Dispute Between P&G and Kraft.

P&G's Request Nos. 2 and 3 seek documents relating to the blockage of vent valves and solutions for preventing such blockage. That is the central issue in the underlying litigation between P&G and Kraft, as the blockage of Plitek's valves allegedly led to Kraft's need to develop its purported invention. Documents responsive to these two Requests are relevant to a number of key issues in the case. For example:

Documents showing Plitek's awareness of the fact that its valves can become blocked are relevant to show the "state of the art" at the time of Kraft's alleged invention, *i.e.* that Kraft did not invent anything that was not already known or obvious to those skilled in the art. In particular, because Plitek knew that its valves could get blocked, Kraft's subsequent appreciation of a need for providing space to avoid valve blockage was neither new nor inventive.

Plitek's own solutions for preventing valve blockage are relevant not only to show the state of the art that existed at the time Kraft purported to invent its solution to valve blockage, but also because they are likely to show how blockage can be avoided without using the alleged invention of the Kraft Patent. In showing how Plitek and its customers avoid valve blockage without using Kraft's alleged invention, Plitek's documents will establish the existence of non-infringing alternatives to the Kraft Patent, which are relevant to determining patent damages. *See*, *e.g.*, *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) (cost difference between allegedly infringing and non-infringing product can effectively cap reasonable royalty); *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1347 (Fed. Cir. 1999) (same).

To the extent Plitek's valves avoided the blocking problem that Kraft purports to solve in a different (or even an inferior) way, that technology also would be relevant to a determination of damages in this case. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116,

9

1120 (D.C.N.Y. 1970) (advantages of patented invention over prior art is relevant to reasonable-royalty calculation).

The documents sought in Request Nos. 15 and 16 are also relevant to the claims and defenses in the dispute between Kraft and P&G. These two requests specifically seek information regarding licensing agreements that Plitek has entered into with other companies (including Kraft) for the vent-valve technology disclosed in the Kraft Patent. One of these parties, another third-party company called Sonoco, licenses Plitek's vent-valve technology and makes peel-off seals incorporating the Plitek valves. The amount that Plitek charges as a licensing fee for use of its vent valve technology is relevant to the value of a license to Kraft's patent, which is merely designed to improve on Plitek's valve and allow it to function as intended. For example, the amount that Plitek charges Sonoco—or others—as a reasonable royalty for the use of the vent valve by itself is extremely relevant to the value companies would place on a purported invention from Kraft that made Plitek's valves operate properly. Damages experts in patent cases routinely rely on license agreements – such as those P&G is seeking from Plitek – to calculate damages based on a "reasonable royalty." *See Georgia-Pacific*, 318 F. Supp. at 1120 (rates paid by licensees for analogous patents are relevant to reasonable royalty calculation). Kraft has indicated that its damages analysis in the Wisconsin action will be based upon a reasonable royalty.

In sum, each of the disputed requests is relevant to at least one issue that is the subject of the underlying action.

    **B.    Plitek's Own Patent Demonstrates That, Contrary To Its Assertion in its Written Responses, It Does Have Responsive Documents Regarding Vent Valve Blockage.**

As a long-time manufacturer of vent valves, it is highly unlikely that Plitek never documented even once the fact that its valves can become blocked, and never created a single document reflecting that it recognizes the problem and discussed or explored ways to avoid or overcome this problem. In fact, although Plitek asserts that such documents do not exist, its own vent-valve patent shows that this cannot be true. As explained above, Plitek's patent is directed to an invention for *overcoming the problem of vent valves becoming blocked* when numerous packages containing the valves are placed in proximity to one another, for example when packaged in bulk. Plitek's patent goes on to discuss previous solutions to prevent valve

10

blockage – specifically, structures or "rails" that were placed on the outer portion of the valves "which prevent an object from physically contacting the [valve's] flexible film." Maynard Decl., Ex. 6 at 1:29-31. Plitek's patent acknowledged that implementing such solution "of course, leads to use of additional materials, manufacturing steps, and ultimately, increased costs." *Id.* at 1:31-33. And Plitek's patent goes on to explain that its invention "eliminates the use of outer rails through the use of at least one *inner* rail. . . ." *Id.* at 1:34-35. Given these explicit disclosures in Plitek's own patent – including its knowledge of vent valve blockage, the prior art solutions to overcoming this problem, and its own claimed invention for overcoming this problem – it is impossible to accept at face value Plitek's assertion that it has *not a single document* in its possession, custody or control "describing methods of preventing valve blockage" (Maynard Decl., Ex. 9 at Plitek's Response to Request No. 3) or "relating to preventing vent valves from being blocked by the overcap of a container." (*Id.* at Plitek's Response to Request No. 2). And, of course, Plitek does not even attempt to assert that it has no documents "relating to vent valves not allowing gases to escape a container" – which are also sought in Request No.2 – or "relating to vent valves, including degassing valves, not functioning properly because of blockage," which are also sought in Request No. 3.

In short, Plitek cannot avoid producing documents responsive to the subpoena by ignoring portions of the requests and providing incredible disavowals as to the remainder. Plitek should be ordered to produce all documents that relate to vent valves becoming blocked or to solutions for preventing such blockage. To the extent Plitek continues to argue that it has no such documents, P&G requests that Plitek be ordered to provide a declaration from an officer stating this position under penalty of perjury.

    **C.**    **Plitek's Objections Have No Merit.**

Plitek's string of boilerplate objections also have no merit.

    **1.**    **Confidentiality Does Not Provide a Basis to Withhold Responsive Documents.**

Plitek objected to Requests Nos. 2, 3, 15 and 16 on the ground that they call for production of "confidential" materials. But the courts have made clear that "confidentiality" is not a valid excuse for withholding responsive documents. *Hanas v. Inner City Christian Outreach Center, Inc.*, 06-CV-10290-DT, 2007 WL 551609, at *2 (E.D. Mich. Feb. 20, 2007); *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y. 1988); *Luey v. Sterling Drug, Inc.*, 240 F.

11

Supp. 632, 636 (W.D. Mich. 1965).  To be sure, the need for confidentiality may be a basis for moving for a protective order (*Carney v. City of Shawnee, Kansas*, No. Civ. A. 98-2019-EEO, 1998 WL 231133, at *1 (D. Kan. 1998)); but that does not help Plitek for two reasons.

First, Plitek never sought a protective order.  Even if it had, it would have had to show good cause for such an order with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).  Good cause in the context of Rule 26 means that Plitek would have to demonstrate "(1) that the material sought to be protected is confidential and (2) that disclosure will create a competitive disadvantage for the party." *Georgia Television Co. v. TV News Clips of Atlanta*, 718 F. Supp 939, 953 (N.D. Ga. 1989).

Second, Plitek cannot possibly show that producing the withheld documents would cause it competitive harm, because *there already is a protective order in place in the underlying action*, and it explicitly permits third parties, such as Plitek, to designate confidential materials for protection.  Maynard Decl., Ex. 12 at ¶1 ("Any Party or non-party producing material or information in this litigation . . . may designate such material or information as 'Confidential' or 'Attorney's Eyes Only". . . .).  Thus, Plitek is already adequately safeguarded from any claimed potential competitive harm.  *See e.g. Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124, 127 (D.D.C. 1998) (denying motion to quash subpoena because the protective order in place protected the confidential information sought).

### 2.    Plitek Has Failed to Demonstrate that Producing the Requested Documents would be "Burdensome, Oppressive, and Harassing."

Plitek objected to Requests Nos. 2, 3, 15 and 16 on the ground that they are "burdensome, oppressive, and harassing."  This objection also lacks merit.  Plitek bears the burden of showing with specificity that responding to P&G's requests would be unduly burdensome. *Beach v. City of Olathe*, 203 F.R.D. 489, 493 (D. Kan. 2001).  Plitek's responses cannot meet this burden. *Manufacturer Direct, LLC v. DirectBuy, Inc.*, No. 2:05 CV 451, 2007 WL 4224072, at *2 (N.D. Ind. Nov. 27, 2007) (a party cannot meet its burden by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence").  Neither Plitek's boilerplate objections nor its meet and

12

confer correspondence gives *any* explanation of the supposed "burden" of producing responsive documents, much less the specific factual showing that would be required to sustain its objection. Accordingly, Plitek's objections should be overruled. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002) (unless a party specifically details the reasons why the discovery sought is overly broad, unduly burdensome, or not relevant it fails to meet its burden to show that it should be excused from complying); *In re Aircrash Disaster Near Roselawn Indiana October 31, 1994*, 172 F.R.D. 295, 306-7 (N.D. Ill. 1997) (overruling party's objections to documents requests because its repetitive boilerplate objections failed to specifically and clearly show how its objections were proper).

### 3. Plitek Cannot Show That the Terms P&G Used are Vague and Ambiguous.

Plitek objected to Request Nos. 2, 3 and 15 by asserting that the term "vent valve" is somehow vague and ambiguous. Nonsense. Plitek had the burden to provide specific reasons why "vent valve," or any other term or phrase in P&G's requests, is vague and ambiguous. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000). As the manufacturer of vent valves – and the holder of a vent valve patent – Plitek cannot credibly assert that the terminology is confusing or unknown to it. Moreover, Plitek was obligated to exercise reason and common sense and attribute ordinary meanings to terms and phrases used by the P&G. *City of Olathe*, 203 F.R.D. at 498 (overruling objection that the phrase "documents showing productivity" was vague and ambiguous); *see also McCoo*, 192 F.R.D. at 694 (overruling objection based on contention that the phrase "any similar agency" was vague and ambiguous). At a very minimum, Plitek should have qualified its response by defining the term. *City of Olathe*, 203 F.R.D. at 498. It may not profess ignorance of what a vent valve means and use that disingenuous objection as an excuse to withhold all relevant, responsive documents.

Plitek also objected that the terms "blocked" and "blockage" and the phrases "functioning properly" and "not functioning properly" in Request No. 3 are too vague and ambiguous for it to respond. Again, this is nonsense. These are common terms with plain, ordinary meanings. Particularly in light of Plitek's own patent, which discusses the problem of a valve becoming obstructed, it cannot credibly claim to be confused or ignorant as to what is being asked. Plitek did not – and cannot – offer any credible explanation for how these common terms are vague or ambiguous; nor did it qualify its response by providing definitions and responding accordingly.

Finally, Plitek objected – again without any explanation or attempt to qualify its response – that the phrase "technology relating to packaging technology" in Request No. 16 is vague and ambiguous. There can be no genuine doubt about what "packaging technology" means.

For all these reasons, the Court should overrule Plitek's objections and order it to produce documents responsive to all four requests.

### D. Plitek Cannot Withhold Documents Based on Privilege Without Producing a Privilege Log.

As the party seeking to withhold documents based on privilege, Plitek bears the burden of establishing all of the elements for each privilege. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Plitek has objected to each of the disputed requests based on claims of attorney-client privilege, work-product immunity and "other privileges or exemptions," but it has refused to provide a privilege log or to otherwise identify precisely what documents it is withholding on these grounds and it has refused to explain the factual basis for its assertion of privilege and protection.

Plitek's position is contrary to law. Rule 45 explicitly requires that Plitek "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess [its] claim[s]." Fed. R. Civ. P. 45(d)(2)(A)(ii). Accordingly, if Plitek intends to withhold documents based on a claim of privilege, it was required to produce a privilege log to enable P&G to assess the merits of these objections. Indeed, Plitek should have produced its privilege log at the time it responded to the subpoena regardless of its other non-privileged based objections. *FTC v. Nationwide Connections, Inc.*, No. 06-08180-CIV, 2007 WL 2462015, at *1 (S.D. Fla. Aug. 27, 2007); *Capital Corp. Mergers & Acquisitions, Inc. v. Arias Co. Ltd.*, No. 6:04-CV-158-ORL-28JGG, 2006 WL 1208012, at *3 (M.D. Fla. May 4, 2006); *Green v. Baca*, 219 F.R.D. 485, 488 (C.D. Cal. 2003). Its failure to do so makes it impossible for P&G – or for this Court – to know what documents Plitek is withholding and to assess the merits of these objections. Accordingly, P&G requests that the Court reject Plitek's unsupported assertion of privilege and other supposed protections and order Plitek to produce the withheld documents.

### IV. CONCLUSION

Plitek's stonewalling must come to an end. Its responses to these four requests are improper and its objections wholly unfounded. The Court should order Plitek to comply with the

subpoena and produce all documents responsive to Request Nos. 2, 3, 15, and 16 within seven days.

                                                  Respectfully submitted,

Dated:  April 28, 2008               THE PROCTER & GAMBLE COMPANY

                                        By:  <u>s/Ekaterena G. Berezutskaya</u>
                                              Ekaterena G. Berezutskaya
                                              HOWREY LLP
                                              321 North Clark Street, Suite 3400
                                              Chicago, IL 60610
                                              Telephone: (312) 846-5622
                                              Facsimile: (312) 595-2250

                                              William C. Rooklidge
                                              Gregory S. Cordrey
                                              Ben M. Davidson
                                              Scott R. Maynard
                                              HOWREY LLP
                                              4 Park Plaza, Suite 1700
                                              Irvine, CA 92614
                                              Telephone: (949) 721-6900
                                              Facsimile: (949) 721-6910